AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of Virginia

FILED

AUG 1 2 2019

CLERK, U.S. DISTRICT COURT
RICHMOND, VA

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*
2010 Buick Lacrosse,
VIN: ███████1064, VA: ███-9548

)
)
)
)
)
)

Case No. 3:19sw 245

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A.

located in the _____ Eastern _____ District of _____ Virginia _____, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☐ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 2113 | Armed Bank Robbery; Using, Carrying, and Brandishing a  Firearm During and In |
| 18 U.S.C. 924(c)(1)(A) | Relation to a Crime of Violence; Aiding and Abetting Bank Robbery; and Forced |
| 18 U.S.C. 2; 18 U.S.C. 2113(e) | Accompaniment during Bank Robbery |

The application is based on these facts:
See Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Reviewed by AUSA/SAUSA:

Kenneth R. Simon, Jr.

*Applicant's signature*

Joshua Hylton, FBI, TFO
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 8/12/2019

/s/
*Judge's signature*

City and state: Richmond, Virginia

Honorable Roderick C. Young, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

IN THE MATTER OF THE SEARCH OF:

**2010 Buick Lacrosse,**
**VIN:** ████████████**1064,**
**VA:** ███**-9548**

Case No. 3:19SW245

**AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR
A WARRANT TO SEARCH AND SEIZE**

I, **Joshua P. Hylton** being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules

of Criminal Procedure for a warrant to search a **2010 Buick Lacrosse, VIN:**

██████████**1064, VA:** ███**-9548**, registered to OKELLO CHATRIE (hereinafter

"**SUBJECT VEHICLE**"). The vehicle to be searched is more particularly described in

ATTACHMENT A, which is incorporated herein by reference.

2.      Your affiant is a law enforcement officer within the meaning of Title 18, United

States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to

conduct investigations of and to make arrests for, offenses enumerated in Title 18, United States

Code, Section 2516. I, the undersigned, have over seven years of law enforcement experience

stemming from employment as a police officer with the Chesterfield County Police Department.

Currently, I am a duly appointed Task Force Officer with the Federal Bureau of Investigation (FBI)

and have been so since December 2016. I am assigned to the Richmond FBI's Central Virginia

Violent Crimes Task Force where my duties include investigating bank robberies, extraterritorial

offenses, armored car robberies, kidnappings, armed carjackings, and theft of government property. I have investigated numerous criminal violations and have obtained arrest and search warrants that have culminated in the successful prosecutions of their respective offenders. The crimes I investigate are violent in nature and usually involve two or more individuals. I am familiar with the methods violent offenders use to conduct their illegal activities, to include, but not limited to their communication methods, use of additional co-conspirators, and reoccurring method of operation.

      3.     This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. The information provided is based upon my personal knowledge, or that of other sworn law enforcement officers participating in this investigation.

## RELEVANT STATUTORY PROVISIONS

4.    Title 18 U.S.C. § 2113(a) – Bank Robbery

5.    Title 18 U.S.C. § 2113(a) and 2 – Aiding and Abetting Bank Robbery

6.    18 U.S.C. § 924(c)(1)(a) – Using, Carrying, and Brandishing a Firearm During and in Relation to a Crime of Violence

7.    18 U.S.C. § 2113(e) – Forced Accompaniment During Bank Robbery

2

## PROBABLE CAUSE

8.     The United States through the FBI's Central Virginia Violent Crimes Task Force (CVVCTF) is conducting a criminal investigation of OKELLO CHATRIE in relation to an armed bank robbery, in violation of Title 18 U.S.C. § 2113.

9.     On May 20, 2019, at approximately 4:52 p.m. eastern standard time, the Call Federal Credit Union located at ▮▮▮▮ Call Federal Drive, Midlothian, VA 23112 was robbed of $195,000 by an armed gunman.  At the time, six victims—a mix of customers and employees— were inside the Credit Union.  The Credit Union is National Credit Union Administration (NCUA) insured, NCUA Number: 15209.

10.    The unknown subject entered the Credit Union, approached victim-teller, J.W., and presented a handwritten note demanding $100,000 and threatening the victim-teller's life: "I've been watching you for sometime now.  I got your family as hostage and I know where you live, If you or your coworker alert the cops or anyone your family and you are going to be hurt.  I got my boys on the lookout out side.  The first cop car they see am going to start hurting everyone in sight, hand over all the cash, I need at least 100k and nobody will get hurt and your family will be set free.  Think smartly everyone safety is depending and you and your coworkers action so I hope they don't try nothing stupid."

11.    After reading this note, J.W. told the subject that she did not have access to that amount of money.  The subject left the demand note in J.W.'s custody and backed away from the counter to produce a silver and black firearm.  The subject then directed the victim-teller and the

3

previously unaware customers and employees at gunpoint to move to the center of the lobby and get on the floor. These six victims were then made to walk behind the teller counter to the area where the bank's safe was located.

12.     Once near the safe, the subject forced everyone to their knees at gunpoint and demanded that the bank manager open the safe. After the safe was opened, the subject provided the manager with a black and red bookbag in which to place the currency. After acquiring $195,000.00 in United States currency belonging to Call Federal Credit Union, the subject fled the area on foot.

13.     After the armed robber left the bank, law enforcement responded. Upon reviewing video surveillance captured inside and outside the bank, law enforcement discovered the following: (1) prior to the robbery, the subject came from behind the southwest corner of an adjacent building, namely Journey Christian Church, at approximately 4:48 p.m.; (2) the subject approached the front entrance of the Credit Union holding a cell phone to the side of his face with his right hand, as if speaking with another party; (3) upon reaching the front entrance of the Credit Union, the subject stood outside for several minutes before entering the bank at approximately 4:52 p.m.; (4) the subject robbed the Credit Union using a silver and black firearm, departing at approximately 4:56 p.m.; and (5) when exiting, the subject ran towards the southwest corner of Journey Christian Church at approximately 4:57 p.m.

14.     On May 20, 2019, law enforcement interviewed the six victims of the armed robbery as well as a witness from Journey Christian Church. The victim-teller described the

4

subject as an approximately 20-30-year-old black male with a height of approximately 5'11'', and a slender build. He/she went on to describe him as having short, braided hair, a scruffy beard, and a foreign accent. Four of the six witnesses recall a strong Jamaican accent. When asked about his clothing, the victim-teller stated that the subject was wearing a gray bucket-style hat with durag underneath, reflective sunglasses, a gray jacket, a reflective construction vest, blue jeans with rips and patches of another blue denim, and black high-top sneakers, resembling Nike Jordans. The firearm brandished during the robbery was silver and black. Other victim accounts indicate the subject carried a small black and red backpack.

15.     Based on your Affiant's review of surveillance video from the Call Federal Credit Union, the suspect's attire is visible on the video recording and appears to fit the description set forth in paragraph 15.

16.     In addition to speaking with the victim-witnesses, your Affiant also interviewed Journey Christian Church's ███████████ ██ on June 27, 2019. ██ recalled his/her encounter with a suspicious individual on May 20, 2019, at approximately 4:30 to 4:40 p.m. ██ advised that while exiting through a back door of Journey Church that is located near the southwestern corner of the building, he/she encountered a dark blue Buick sedan parked in the fire lane approximately four (4) feet from his vehicle. ██ further described the Buick as a "newer car, somewhere between 2010-2015 model, with no specific identifiers to note (decals, rims, spoiler, etc)." ██ recalled seeing one occupant in the dark blue Buick sedan—a black male wearing reflective sunglasses, reclined in the driver's seat. Similarly, on May 21, 2019, law

5

enforcement interviewed ▮▮▮ who stated that he observed a male in the driver's seat, wearing reflective sunglasses.

17.    On June 14, 2019, Your Affiant applied for and obtained a search warrant from a magistrate with Chesterfield County.   The search warrant authorized the search of records possessed by Google, Inc., specifically information concerning any Google Account(s) within a certain geographical area (delineated by latitude and longitude) of the Credit Union and surrounding area between 4:20 p.m. and 5:20 p.m.  The geographical area focused upon the Credit Union and Journey Christian Church.

18.    Based upon Google's return of anonymized information, your Affiant discovered a Google Account that: (1) was near the southwestern corner of Journey Christian Church prior to the robbery at approximately 4:30 to 4:40 p.m.—the time period ▮▮▮ recalled encountering an individual wearing reflective glasses in a blue Buick sedan; (2) was near the southwestern corner of Journey Christian Church prior to the robbery at approximately 4:48 p.m.; (3) was inside the Credit Union during the time of the robbery; and (4) immediately left the area following the robbery, leaving from the southwestern corner of Journey Christian Church.  This same Google Account traveled directly from the area of the bank to ▮▮▮ MASON DALE DRIVE, NORTH CHESTERFIELD, VA 23234.  Review of surveillance video from Call Federal Credit Union, as referenced in paragraph 13, corroborates the Google Account's geographical location data during the time of the robbery.

6

19.     Upon your Affiant's request for specific subscriber information for this Google Account, as provided for in the June 14, 2019, search warrant, Google provided the following subscriber information: Name: Jamaican Media; Email: Okellochatrie55@Gmail.com; and Google Account ID: 365520819283.

20.     A utilities inquiry of ▮ MASON DALE DRIVE, NORTH CHESTERFIELD, VA 23234 shows that OKELLO CHATRIE is listed as a subscriber with the following associated telephone number, (804) 475-8298. Based on the similarity between CHATRIE's name and the email associated with the Google Account referenced above, Your Affiant utilized various databases to glean additional information about CHATRIE.

21.     These searches revealed that CHATRIE is a 24-year-old black male of Jamaican birth, 6'0" tall, and weighing 180 lbs. In addition, a 2018 photograph shows him with braided hair and an unkempt beard.

22.     In light of the physical similarities between CHATRIE and the subject involved in the Credit Union robbery, your Affiant conducted a vehicle inquiry on CHATRIE, which indicated that he owns the **SUBJECT VEHICLE**. A license plate reader (LPR) inquiry indicated the **SUBJECT VEHICLE** has been observed at ▮ Mason Dale Drive, North Chesterfield, VA 23234. The photographs associated with the report revealed, however, that the vehicle was parked at ▮ MASON DALE DRIVE, NORTH CHESTERFIELD, VA 23234.

23.     A law enforcement inquiry of OKELLO CHATRIE revealed that on April 1, 2018, CHATRIE brandished a 10 mm Glock, model G20 pistol at his father and threatened to kill him.

7

In response to the domestic disturbance, Chesterfield County law enforcement officials took CHATRIE and his firearm into custody. Upon your Affiant's review of body worn camera (BWC) associated with CHATRIE's domestic assault, brandishing, and arrest, it is your Affiant's belief that CHATRIE speaks with an accent foreign to the United States, specifically Jamaican and/or "Caribbean Islander." CHATRIE's charges were later nolle prossed and his pistol was never returned to him.

24.     As a result, your Affiant conducted a firearm gun log search for CHATRIE. The inquiry indicated that CHATRIE purchased a silver and black 9mm G2C Taurus semiautomatic pistol on April 29, 2019, at Bob Moates Sports Shop, Inc., ███ Hull Street Rd, Midlothian, VA 23112. Your Affiant retrieved the Department of Justice Form 4473 filled out by CHATRIE to purchase said firearm.

25.     A search of law enforcement databases for CHATRIE indicates no history of pawn shop transactions undertaken by CHATRIE.

26.     To further the investigation, your Affiant conducted an inquiry with the Virginia Employment Commission. This search revealed that CHATRIE was employed with Home Depot during the first quarter of 2019. On July 12, 2019, your Affiant visited a Home Depot in Henrico, VA and learned that CHATRIE was no longer employed with said company. Your Affiant was given a copy of CHATRIE's basic employment data, which yielded the following contact information during his employment with Home Depot:

    a.   cell phone: (804) 475-8298;

8

    b.  email: Okellochatrie55@Gmail.com; and

    c.  address: ▮▮▮ MASON DALE DRIVE, NORTH CHESTERFIELD, VA 23234.

27.    An inquiry of CHATRIE's primary contact number, (804) 475-8298, showed that the service provider is SPRINT. Furthermore, OKELLO CHATRIE is listed as the subscriber. After running CHATRIE's contact number through federal deconfliction databases, it was found that (804) 475-8298 sent/received two (2) text messages and sent/received six (6) phone calls ▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ during July 2018.

28.    On July 17, 2019, your Affiant applied for and obtained a search warrant issued by Magistrate Judge Novak for real time geolocation data. That search warrant was served on SPRINT for CHATRIE's cellular device. On July 17, 2019, SPRINT advised the FBI that the services to (804) 475-8298 were terminated on July 7, 2019.

29.    Subsequent to the above, your Affiant sought Sprint toll records for (804) 475-8298. Review of said data shows that 17 minutes prior to the robbery (while parked near the southwestern corner of Journey Christian Church), CHATRIE had a 22-minute phone call with a subject utilizing telephone number ▮▮▮▮▮▮▮▮

30.    An inquiry of telephone number ▮▮▮▮▮▮▮ indicates the subscriber is a resident of ▮▮▮▮ ▮▮▮▮. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

9



31.     After further review of CHATRIE's toll records, data shows that 66 minutes after

the robbery, CHATRIE had a 20-minute phone call with a subject utilizing telephone number

An inquiry of said number indicates that                    is the subscriber.

Law enforcement databases indicate            resides at

, NORTH CHESTERFIELD, VA 23236.

32.     While examining CHATRIE's contact history with                    it was noted

that the two devices communicated 157 times between January 1, 2019 and May 25, 2019, with

an increase in call duration immediately following the Call Federal Credit Union robbery on May

20, 2019.

   a.   January 2019: six (6) calls (approximately 18 minutes total)

   b.   February 2019: 27 calls (approximately 43.5 minutes total)

   c.   March 2019: 2 calls (approximately three (3) minutes total)

   d.   April 2019: 9 calls (approximately 19 minutes total)

   e.   May 01 – May 19, 2019: 72 calls (approximately 140 minutes total)

10

   f. May 20 – May 25, 2019: 41 calls (approximately 237.5 minutes)

  33. Due to CHATRIE's association with the  MASON DALE DRIVE, NORTH CHESTERFIELD, VA 23234 and his travel to the address immediately following the robbery, your Affiant also sought the toll records of CHATRIE's father,

and sister,         Review of said data indicates CHATRIE may be utilizing a new and/or additional phone number, (804) 939-3788.

    a. In   records, (804) 939-3788 first appears on May 23, 2019, and is last seen on July 23, 2019. During the referenced time, 12 calls were made between the two devices.

    b. In   records, (804) 939-3788 first appears on May 24, 2019, and is last seen on July 5, 2019. During the referenced time, five (5) calls were made between the two devices.

  34. When comparing new phone numbers in  and  toll records for after the robbery on May 20, 2019, CHATRIE's new suspected telephone was the only new number in common. In your Affiant's experience, parties responsible for violent crimes often begin using new telephone numbers to conduct their personal or illegal activities shortly following a criminal act. Furthermore, it is your Affiant's belief that CHATRIE began using (804) 939-3788 to supplement his communication with known associates between the dates of May 23, 2019 and July 7, 2019; whereupon, CHATRIE either used two cellular telephones for communication or swapped SIM cards within the same device to avoid detection by law enforcement.

11

35.     An inquiry of CHATRIE's new suspected number, (804) 939-3788, indicates the service provider is T-Mobile. Furthermore, ███ ███ is listed as the subscriber. Law enforcement databases show that ███ resides at ███ ███, NORTH CHESTERFIELD, VA 23236.

36.     This address is further referenced in paragraph 31 and is also associated with ███ ███ the individual with whom CHATRIE had a 20-minute call 66 minutes after the robbery. In your Affiant's experience, known associates and/or conspirators of violent offenders, will often aid in the concealment of evidence in the furtherance of criminal activity or in the protection of parties involved. In this instance, it is your Affiant's belief that ███ either assisted CHATRIE in acquiring a new account with T-Mobile or allowed him to use a SIM card from a separate device with active service.

37.     On July 7, 2018, ███ was involved in a domestic dispute between her mother, and mother's boyfriend, ███ at ███ NORTH CHESTERFIELD, VA ███ Considering CHATRIE is an associate of both ███ and ███ and the defendant's increased contact with ███ near the time of the robbery, it is your Affiant's belief that both parties have direct knowledge of and/or involvement in the Call Federal Credit Union robbery.

38.     On July 18, 2019, an additional LPR check was conducted on the **SUBJECT VEHICLE**. The accompanying report indicated that the **SUBJECT VEHICLE** had been observed at ███ Willis Street, Richmond, Virginia 23224. However, upon response to the area on the date of the inquiry, your Affiant observed the vehicle in question parked in front of ███

12

WILLIS STREET, RICHMOND, VA 23224.  After conducting surveillance on this residence for some time, CHATRIE was seen on the front porch with a black female, who was grooming his hair.  While law enforcement observed the two parties, CHATRIE approached the **SUBJECT VEHICLE** to retrieve an item out of the back seat.



40.     Pursuant to the above surveillance, on July 19, 2019, law enforcement agents applied for and obtained a search warrant from Magistrate Judge David Novak for the placement of a GPS tracking device on the **SUBJECT VEHICLE**.

41.     Since the GPS device's installment on July 23, 2019, no parties other than CHATRIE have been observed operating the **SUBJECT VEHICLE**.  Furthermore, review of electronic data associated with the GPS tracking device on the **SUBJECT VEHICLE** shows that on most evening/nights, the **SUBJECT VEHICLE** is located at ▮ Willis Street, Richmond, VA 23224.

42.     During physical surveillance, law enforcement agents captured several still images of the **SUBJECT VEHICLE** and presented them to ▮ -the witness referenced in paragraph

13

17 of this affidavit—on July 23, 2019. ███ noted that the vehicle in the photographs was the same make, model, body shape, color, and year as the vehicle observed behind Journey Christian Church, located at ███ Price Club Blvd., Midlothian, VA, prior to the robbery on May 20, 2019.

43.     On July 31, 2019, law enforcement met with ███ at Journey Christian Church to determine the subject's specific vehicle placement prior to the robbery. During the interview, ███ did not specifically recall the gender, race, or whether the defendant was wearing reflective sunglasses.

44.     Subsequent to the review of Google Geo data referenced in paragraphs 18 - 20, your Affiant applied for and obtained a search warrant on July 18, 2019, from Magistrate Judge David   Novak   for   the   historical   Google   records   associated   with   account: Okellochatrie55@Gmail.com; and Google Account ID: 365520819283, between the dates of May 1, 2019 and July 15, 2019.

45.     Analysis of this location history and activity data associated with CHATRIE's Google account, and technical surveillance data associated with the **SUBJECT VEHICLE** revealed the following:

> a.  during the week prior to the bank robbery (May 13, 2019 to May 19, 2019),
>     location history records indicate that CHATRIE's phone was located near ███
>     MASON DALE DRIVE, NORTH CHESTERFIELD, VA 23234 for 158 hours
>     and near ███████████ NORTH CHESTERFIELD, VA 23236 for
>     approximately seven (7) hours of recorded time;

14

b.  on the day of the bank robbery, May 20, 2019, location history records indicate
that CHATRIE's phone was located near the following places:

- 12:00 AM – 10:30 AM  ▆▆▆ MASON DALE DRIVE

- 11:01 AM – 11:18 AM  Vicinity of Journey Christian Church

- 11:38 AM – 3:35 PM  ▆▆▆ MASON DALE DRIVE

- 4:03 PM – 4:51 PM  Vicinity of Journey Christian Church

- 4:52 PM – 4:54 PM  Call Federal Credit Union

- 4:58 PM – 5:49 PM  Genito Road, approaching Courthouse Road

- 5:13 PM – 6:06 PM  ▆▆▆ MASON DALE DRIVE

- 6:53 PM – 8:32 PM  ▆▆▆ MASON DALE DRIVE

- 8:52 PM – 10:36 PM  ▆▆▆▆▆▆▆▆▆▆ (▆▆▆▆
   ▆▆▆▆ ▆▆▆

- 10:56 PM – 11:59 PM  ▆▆▆ MASON DALE DRIVE

c.  during the week following the bank robbery (May 21, 2019 to May 27, 2019),
location history records indicate that CHATRIE's phone was located near▆▆▆
MASON DALE DRIVE, NORTH CHESTERFIELD, VA 23234 for 42 hours and
near the ▆▆▆▆▆▆▆▆▆, NORTH CHESTERFIELD, VA 23236 for 50
hours of recorded time

d.  most recently, during the period of July 23, 2019 to July 28, 2019, technical
surveillance was conducted on the **SUBJECT VEHICLE**, indicating that

15

CHATRIE was in the vicinity the ▮▮▮ WILLIS STREET, RICHMOND, VA 23224 for 131 hours of recorded time.

46.   Based on the foregoing, it is your Affiant's belief that CHATRIE's lifestyle has significantly changed since the day of the robbery, May 20, 2019.  In your Affiant's experience, violent offenders often alter their routines, telephone numbers, places they frequent and/or stay, and who they associate with, following a violent act.  Furthermore, such a change normally occurs to avoid law enforcement suspicion and/or detection.

47.   In your Affiant's training and experience, when people act in concert with another to commit a crime, they frequently utilize cellular telephones, computers, tablets, notebook computers, and like devices to communicate with each other through voice calls, text messages, social media accounts, and emails.  These COMPUTERS as described in ATTACHMENT B, allow subjects to plan, coordinate, execute, and flee the scene of violent crimes.  Furthermore, your Affiant knows that parties involved in violent offenses often use COMPUTERS to gather intelligence information before and after the execution of a robbery or like offense.  The examination of such data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device(s) in question.

48.   Based on the totality of facts and circumstances referenced herein, your Affiant believes that it is probable CHATRIE is responsible for the armed robbery of the Call Federal Credit Union.  As such, your Affiant finds it necessary and prudent to search the **SUBJECT VEHICLE** described in ATTACHMENT A for the items described in ATTACHMENT B.  The

16

**SUBJECT VEHICLE**, being of similar color, make, and year as described by ▆ in paragraph 17 and 42, and having only been observed in the dominion and control of CHATRIE during law enforcement surveillance, likely has evidence and fruits of the crime as described in ATTACHMENT B. In your Affiant's training and experience, parties responsible for violent acts often hide evidence in vehicles they own or in dwelling they reside and/or frequent. As such, the **SUBJECT VEHICLE** would provide CHATRIE with an ideal location to store items of evidentiary value to the Call Federal Credit Union robbery.

<b>CONCLUSION</b>

49.   I submit that this affidavit supports probable cause for a warrant to search the **SUBJECT VEHICLE** described in ATTACHMENT A and seize the items described in ATTACHMNET B.

Respectfully submitted,

Joshua P. Hylton
Task Force Officer
Federal Bureau of Investigation

Subscribed and sworn to before me
on August 12, 2019:

/s/

Roderick C. Young
United States Magistrate Judge

17

## ATTACHMENT A

*Property to be Searched*

**2010 Buick Lacrosse, VIN:** ███████████1064, VA: ███-9548, registered to

OKELLO CHATRIE. The **SUBJECT VEHICLE** is pictured below:



## ATTACHMENT B

*Property to be Seized*

1.   United States Currency, to include:

  a.   packaging items (money bands and/or bundling material).

2.   All records relating to violations of 18 U.S.C § 2113(a) and 2, 18 U.S.C. §

924(c)(1)(a), 18 U.S.C. § 2113(e), and the planning, execution, and concealment of said crimes,

to include:

  a.   records and information relating to the obtaining, possession, concealment, or

      transfer of U.S. or foreign currency, including bank records, ATM receipts,

money transfer receipts or orders, cashier's checks or receipts, bank drafts, bank checks, prepaid cards, debit cards, payment cards, safe deposit box keys or other similar items;

b.  records and information relating to travel and residence, including lodging, lease agreements, rental vehicles, airline bookings, flights, GPS data from navigation systems, mailing addresses, PO boxes, or similar items;

c.  records and information relating to the conspiracy to commit bank robbery;

d.   records and information relating to using, carrying, and brandishing a firearm during and in relation to a crime of violence; and

e.   records and information relating to the identity or location of additional unknown suspects and/or conspirators.

3.      Mobile Telephones

4.      Handwriting samples, to include:

a.  notes;

b.  legal documents; and

c.   journals.

5.      Clothing and accessories consistent with items worn by the suspect during the time of robbery, to include:

a.  round brimmed hat;

b.  reflective sunglasses;

c.  long-sleeved shirt;

d.  reflective traffic and/or work vest;

2

e.  bookbag;

f.  blue jeans; and

g.  tennis shoes.

6.      For any computer or storage medium whose seizure is otherwise authorized by

this warrant, and any computer or storage medium that contains or in which is stored records or

information that is otherwise called for by this warrant (hereinafter, "COMPUTER"):

a.  evidence of who used, owned, or controlled the COMPUTER at the time the

things described in this warrant were created, edited, or deleted, such as logs,

registry entries, configuration files, saved usernames and passwords, documents,

browsing history, user profiles, email, email contacts, "chat," instant messaging

logs, photographs, and correspondence;

b.  evidence of software that would allow others to control the COMPUTER, such as

viruses, Trojan horses, and other forms of malicious software, as well as evidence

of the presence or absence of security software designed to detect malicious

software;

c.  evidence of the lack of such malicious software;

d.  evidence of the attachment to the COMPUTER of other storage devices or similar

containers for electronic evidence;

e.  evidence of counter-forensic programs (and associated data) that are designed to

eliminate data from the COMPUTER;

f.  evidence of the times the COMPUTER was used;

g.  passwords, encryption keys, and other access devices that may be necessary to

3

access the COMPUTER;

h.   documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

i.   records of or information about Internet Protocol addresses used by the COMPUTER;

j.   records of or information about the COMPUTER's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses; and

k.   contextual information necessary to understand the evidence described in this attachment.

7.   As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

8.   The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high-speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

9.   The term "storage medium" includes any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-

4

ROMs, and other magnetic or optical media.

10. Firearms believed to have been used in the commission of the robbery or otherwise illegally possessed, to include:

    a. receipts of firearm purchase(s) and/or ownership;

    b. ammunition and cartridge cases; and

    c. firearm boxes.

11. Safes and/or other locked containers and compartments within the **SUBJECT VEHICLE**, having the ability of containing any items referenced in ATTACHMENT B.

5